UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Medtronic, Inc.,

Plaintiff,

v.

David Camp and
Dennis Nichols,

Defendants.

Civ. File No. 02-285 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order ("TRO"). For the reasons that follow, the Motion is granted.

**BACKGROUND**

Defendants David Camp and Dennis Nichols were employed by Plaintiff Medtronic, Inc. ("Medtronic") as sales representatives for Medtronic in Georgia and North Florida. At the inception of their employment in 1997, each signed the Medtronic Sales Employee Agreement (the "Agreement"). (Compl. Exs. C and D.) The Agreement provides that

> After termination of employment, Employee will not solicit sales of Competitive Products to Key Accounts located in any sales territory he/she covered or supervised for Medtronic during the last year of employment for a period of time [of] . . . not more than 270 days.

(Id. ¶ 8.) In relevant part, the Agreement defines "Competitive Products" as products "that are of the same general type, perform similar function or are used for the same purposes as" products the employee sold during the last year of employment. (Id. ¶ 2(a)-(b).) "Key

FILED FEB 0 7 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

Accounts" are the fifteen largest dollar volume customers of Medtronic in the employee's sales territory. (Id. ¶ 2(d).) Finally, the Agreement specifies that, in the event the employee is unable to secure employment because of the strictures in the Agreement, Medtronic will pay the employee the same compensation he received during his last year at Medtronic. (Id. ¶ 9.)

There is some dispute between the parties as to what products Camp and Nichols sold during their tenure at Medtronic. They concede that they sold pacemakers but contend that they did not sell defibrillators. Medtronic asserts that Camp and Nichols did sell defibrillators. For the purposes of this Motion only, the Court will assume that, under the Agreement, Camp and Nichols sold both pacemakers and defibrillators for Medtronic, and thus were precluded from selling these or similar devices for a competitor.

In December 2001, both Camp and Nichols resigned from Medtronic. Shortly thereafter, they began working for one of Medtronic's biggest competitors, St. Jude. Medtronic and St. Jude attempted to negotiate Defendants' apparent violation of the Agreement, but after St. Jude made clear that it would allow Camp and Nichols to sell defibrillators to thirteen of the fifteen "key accounts," Medtronic brought this action. Medtronic seeks a TRO to force Camp and Nichols to abide by the terms of the Agreement.

The same day that Medtronic filed this lawsuit in Anoka County, Camp and Nichols filed a lawsuit in federal court in Georgia. Camp and Nichols contend that their lawsuit preceded Medtronic's lawsuit and that, under the first-filed rule, the Court should dismiss

Medtronic's Complaint and allow the matter to proceed in Georgia. There is conflicting evidence as to which lawsuit was indeed filed first. Moreover, Medtronic has not had the opportunity to respond to Defendants' Motion to Dismiss, because the Motion was not filed until moments before the hearing on Medtronic's request for a TRO. Thus, the Court will allow the parties to fully brief the issues raised in the Motion to Dismiss. In the meantime, the Court will assume jurisdiction over the matter and will consider the merits of the request for the TRO.

## DISCUSSION

### A. Injunctive Relief

A TRO may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is considered to be a "drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993).

Where a former employee violates a valid covenant not to compete, the Court may infer irreparable harm to the employer. See Alside, Inc. v. Larson, 220 N.W.2d 274, 278 (Minn. 1974); Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1091 (D. Minn. 1981). Moreover, irreparable harm is often inferred from the threatened misappropriation of trade

secrets or other confidential information. See Minn. Stat. § 325C.02. Camp and Nichols have not alleged that the Agreement is invalid in any way, and they appear to concede that they are violating the terms of the Agreement.[1] Thus, Medtronic has established that it is suffering irreparable harm.

In light of Defendants' concession that they are violating the Agreement, Medtronic has also met its burden at this very preliminary stage of the litigation to show that it is likely to succeed on the merits of its claims. Moreover, because Medtronic has established irreparable harm, the balance of harm tips in favor of Medtronic. In addition, should Camp and Nichols be forced to resign from St. Jude because of the restrictions in the Agreement, Medtronic will compensate them until the restrictions expire. Camp and Nichols cannot show that their harm outweighs the irreparable harm their breach of the Agreement is causing to Medtronic.

Finally, public policy favors the enforcement of valid contracts and the protection of business interests. Thus, this factor weighs in favor of Medtronic.

**B. Jurisdiction**

Camp and Nichols contend that the Court lacks personal jurisdiction over them. They claim that their contacts with Minnesota are insufficient for the exercise of either general or

---

[1] Camp and Nichols deny that they sold defibrillators for Medtronic, and thus to the extent they are selling only defibrillators for St. Jude, they deny that they are violating the Agreement. As discussed above, however, the Court will assume for the purposes of this Motion that Camp and Nichols did sell defibrillators for Medtronic. Under this assumption, there is no dispute that Camp and Nichols are violating the Agreement.

specific jurisdiction. Because this argument was raised in the Motion to Dismiss, Medtronic has not had the opportunity to respond to it. However, for the purposes of the TRO, the Court will assume that Defendants' contacts with Minnesota as outlined at the hearing are sufficient to establish the Court's jurisdiction over them. Defendants are free to challenge this preliminary finding in later briefing.

## CONCLUSION

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for a Temporary Restraining Order (Clerk Doc. No. 2) is **GRANTED** as follows:

   a. Pending further Order of this Court, Defendants David Camp and Dennis Nichols are hereby restrained from violating the terms of the Medtronic Sales Employee Agreement. Specifically, Defendants must not render any services, directly or indirectly, in connection with the sale of cardiac rhythm management devices, including implantable pacemakers and implantable defibrillators, or any other device which provides therapies for bradycardia, tachycardia, or tachyarrhythmia, to any of the fifteen hospitals or clinics that constitute Key Accounts as outlined in Medtronic's papers, or to any physician, nurse, catheter lab

technician, purchasing agent, or other representative of such hospital or clinic;

2. Pursuant to Fed. R. Civ. P. 65, within ten days from the date of this Order, Plaintiff shall post a bond in the amount of $20,000 to secure this Temporary Restraining Order. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court;

3. Plaintiff is directed to contact the Court's Calendar Clerk, Ms. Suzanne Ruiz, to schedule a hearing on a motion for preliminary injunction; and

4. The parties may conduct expedited discovery, including depositions and document production, prior to the hearing on the motion for preliminary injunction.

Dated: February 6, 2002

Paul A. Magnuson
United States District Court Judge