UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Medtronic, Inc., Civ. File No. 02-285 (PAM/JGL)

Plaintiff,

v. **MEMORANDUM AND ORDER**

David Camp and
Dennis Nichols,

Defendants.

---

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction and Defendants' Motion to Dismiss, Stay, or Transfer. On February 7, 2002, this Court granted Plaintiff's request for a temporary restraining order preventing Defendants from working for one of Plaintiff's competitors.

**BACKGROUND**

Much of the relevant background is set forth in the Temporary Restraining Order ("TRO"). Defendants David Camp and Dennis Nichols were employed by Plaintiff Medtronic, Inc. ("Medtronic") as sales representatives in Georgia and North Florida. Each Defendant signed Medtronic's Sales Employee Agreement (the "Agreement"), which provides that

> After termination of employment, Employee will not solicit sales of Competitive Products to Key Accounts located in any sales territory he/she covered or supervised for Medtronic during the last year of employment for a period of time [of] . . . not more than 270 days.

APR 0 2 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(Compl. Exs. C and D at ¶ 8.) In relevant part, the Agreement defines "Competitive Products" as products "that are of the same general type, perform similar function or are used for the same purposes as" products the employee sold during the last year of employment. (Id. ¶ 2(a)-(b).) "Key Accounts" are the fifteen largest dollar volume customers of Medtronic in the employee's sales territory. (Id. ¶ 2(d).) Finally, the Agreement specifies that, in the event the employee is unable to secure employment because of the Agreement, Medtronic will pay the employee the same compensation that he received during his last year at Medtronic. (Id. ¶ 9.)

Shortly before Defendants left Medtronic, each attempted to exercise Medtronic stock options. Under the terms of Medtronic's stock option plan, Medtronic may repurchase stock from an employee who goes to work for a competitor within six months of exercising his or her options. Defendant Nichols successfully exercised his options on December 14, 2001, and Medtronic has demanded that those options be returned. Nichols has thus far refused to return the options to Medtronic. Defendant Camp attempted to exercise his options but Medtronic discovered that he intended to leave Medtronic to work for St. Jude and blocked that exercise.

In December 2001, Defendants resigned from Medtronic and shortly thereafter began working for one of Medtronic's biggest competitors, St. Jude. Medtronic seeks to prevent Defendants from working for St. Jude, claiming that such employment violates the terms of the covenant not to compete.

On the same day that Medtronic filed the instant lawsuit in Anoka County, Defendants instituted a separate proceeding in the Northern District of Georgia. That lawsuit originally involved only claims arising out of the stock option exercise. However, after receiving a copy of Medtronic's Complaint in this matter, Defendants amended their complaint in Georgia to seek a declaratory judgment that they are not in violation of the terms of the covenant not to compete. Although they have requested a TRO in Georgia, the court there has not held any hearings or made any rulings in the case.

Defendants contend that this Court lacks personal jurisdiction over them and that the case must be dismissed. In the alternative, Defendants argue (1) that the first-filed rule should apply to give priority to the allegedly first-filed Georgia action; or (2) that venue in this District is improper and the matter should be transferred to the Northern District of Georgia. Defendants also assert that Medtronic is not likely to succeed on the merits of its claims, making an injunction inappropriate, because Defendants sold only pacemakers for Medtronic and will sell a different product, defibrillators or ICDs, for St. Jude. Thus, according to Defendants, they are not violating the terms of the non-compete.[1]

---

[1] Medtronic has moved to strike various affidavits filed with Defendants' reply brief in support of their Motion to Dismiss. As the Court indicated at the hearing, this Motion is denied.

## DISCUSSION

### A. Personal Jurisdiction

Once a defendant has challenged a federal court's in personam jurisdiction, the plaintiff bears the burden of presenting a prima facie case that such jurisdiction exists. Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp. 2d 990, 995 (D. Minn. 1998) (Tunheim, J.). Where personal jurisdiction is challenged at the pretrial stage, as here, all evidence must be viewed in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. Id. Doubts as to whether a court has personal jurisdiction over an individual or entity should be resolved in favor of retaining jurisdiction. Hunter-Keith, Inc. v. Gen. Elec. Credit Corp., Civ. No. 4-84-804, 1987 WL 8592, at * 4 (D. Minn. Apr. 1, 1987) (Rosenbaum, J.).

The general test for deciding whether a federal court may exercise personal jurisdiction over a civil defendant is well known. First, the court must determine whether the forum state's long-arm statute subjects the defendant to jurisdiction. Second, the exercise of jurisdiction must comport with the due process requirements of the Fifth Amendment. Where the relevant state long-arm statute extends as far as due process allows, as does Minnesota's, the two inquiries are codeterminate. See Minn. Stat. § 543.19; Dotmar, Inc. v. Niagra Fire Ins. Co., 533 N.W.2d 25, 29 (Minn. 1995) (describing reach of Minnesota's long-arm statute). In order to satisfy due process, a defendant must have "minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's "contacts" with the forum state generally must not arise due to mere fortuity, but must arise because of the defendant's "purposeful availment" of the privilege of conducting activities in the state. See Hanson v. Denkla, 357 U.S. 235, 253 (1958); Digi-Tel Holdings, Inc. v. ProTeq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996).

1. General Jurisdiction

General personal jurisdiction is present whenever a defendant's contacts with the forum state are so "continuous and systematic" that it may be sued in the forum over any controversy, whether or not the cause of action has any relationship to the defendant's activities within the State. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984). This standard is met for citizens of the forum state; for others, the standard is usually exacting and difficult to meet. See Nichols v. G. D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993) (noting that general jurisdiction is falling into growing disfavor as the doctrine of specific jurisdiction broadens). Medtronic does not argue that Defendants are subject to the general jurisdiction of the Court.

2. Specific Jurisdiction

The exercise of personal jurisdiction may be appropriate even in the absence of general jurisdiction if the Court has specific jurisdiction over Defendants. If Defendants have purposely directed activities at residents of the forum and the litigation results from

"alleged injuries that 'arise out of or relate to' those activities," a finding of specific jurisdiction is appropriate. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (citing Helicopteros, 466 U.S. at 414).

The parties argue at length about the nature and quality of Defendants' contacts with Minnesota. It is not disputed that each Defendant visited Minnesota at least one time in the course of his employment with Medtronic. Nor is it disputed that Defendants had almost-daily contact with Medtronic's offices in Minnesota, to order products and to communicate about products they sold. Moreover, Defendants each entered into a contract with Medtronic, a Minnesota company, that provided for the application of Minnesota law. It is the alleged breach of this contract that gives rise to Medtronic's Complaint in this matter.

The determination of whether to exercise jurisdiction is not subject to bright-line rules. Instead, the Court must evaluate the contacts with the forum to determine whether, based on those contacts, the defendant knew or should have known that he could be haled into court in the forum. Although this matter presents a close case, given Defendants' daily contact with Minnesota and purposeful contracting with a Minnesota company, it cannot come as a surprise to Defendants to be haled into a Minnesota court for the breach of that contract. Thus, the Court finds that Defendants are subject to the jurisdiction of this Court for the purposes of this litigation.

## B. Venue

Defendants argue that the first-filed rule mandates a transfer of this action to Georgia, that venue is improperly laid in this Court under 28 U.S.C. § 1391, or that the Court should transfer venue to Georgia under 28 U.S.C. § 1404.

### 1. First-filed rule

Although the parties hotly contest the applicability of the first-filed rule, this case is not an appropriate case for the invocation of that doctrine. Here, it appears that the Georgia action was filed, at most, 30 minutes before the Minnesota action. For all intents and purposes, the actions were simultaneously filed, and neither party can claim first-filed priority.

### 2. Section 1391

Defendants contend that the Court should follow a recent decision on venue written by the Honorable Donovan W. Frank of this Court. Guidant Sales Corp. v. Niebur, No. 01-1772, 2002 WL 205575 (D. Minn. Feb. 7, 2002). In that case, two employees of a Minnesota company who worked as sales representatives in Illinois left the Minnesota company to work for a competitor. The Minnesota company brought a TRO seeking to enforce covenants not to compete that both employees had signed. The defendants moved to dismiss or transfer venue, and Judge Frank found that venue in Minnesota was improper. He based his reasoning on the language of the venue statute, 28 U.S.C. § 1391(a)(2), which provides that venue may lie in a district if "a substantial part of the events or omissions giving rise to the

claim occurred" there. Judge Frank determined that the defendants' contacts with Minnesota were arguably enough for the exercise of jurisdiction, but that the events giving rise to the employer's claim occurred in substantial part outside of Minnesota. Id. at *5.

Medtronic asserts that Judge Frank's opinion is against the weight of authority on the venue question. According to Medtronic, the venue statute allows for venue in any district in which there is also personal jurisdiction. This is a misrepresentation of the law. The venue statute provides that a case may be brought in "(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3) (emphasis added). Here, it is apparent that Minnesota is not the only district in which Medtronic's action may be brought. Medtronic does not contend, nor could it contend, that its action could not have been brought in Georgia. Thus, as Judge Frank discussed in Guidant, venue is proper only if "a substantial part of the events or omissions giving rise to the claim occurred" in Minnesota. Id. § 1391(a)(2).

The Court finds Judge Frank's reasoning in Guidant persuasive. As in that case, Defendants' contacts with Minnesota are minimal. The events giving rise to Medtronic's claims occurred in Georgia, not Minnesota. Thus, venue is not proper here.

28 U.S.C. § 1406 gives the Court discretion to dismiss or to transfer an improperly venued action. Because there is a lawsuit pending in Georgia and Defendants have requested a transfer to Georgia, the Court will transfer the action to the Northern District of

Georgia. Having determined that venue is improper, the Court will dissolve the previously ordered TRO and will not address the merits of Medtronic's request for a preliminary injunction.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Strike (Clerk Doc. No. 36) is **DENIED**;
2. Plaintiff's Motion for a Preliminary Injunction (Clerk Doc. No. 16) is **DENIED without prejudice**;
3. The Temporary Restraining Order entered February 7, 2002 (Clerk Doc. No. 7) is hereby **DISSOLVED**;
4. Defendants' Motion to Dismiss, Stay, or Transfer (Clerk Doc. No. 9) is **GRANTED in part** and **DENIED in part**; and
5. The Clerk of Court is directed to **TRANSFER** this case to the United States District Court for the Northern District of Georgia.

Dated: April 1, 2002

Paul A. Magnuson
United States District Court Judge